UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CR-60284-RAR

UNITED STATES OF AMERICA,

vs.

RICARDO ORLANDO LOPEZ,

Defendant.
_____/

ORDER ADOPTING REPORT AND RECOMMENDATION

THIS CAUSE comes before the Court upon United States Magistrate Judge Strauss's Report and Recommendation ("Report"), [ECF No. 90], filed on May 18, 2023. The Report recommends that the Court deny Defendant's Motion to Suppress Search of Parcel and Request for *Franks* Hearing ("Motion"), [ECF No. 77], on the merits and deny the Government's Motion to Dismiss the Defendant's Motion to Suppress, [ECF No. 81], as moot. *See* Report at 1–2 & n.1. The Report concludes that Defendant likely did not have a reasonable expectation of privacy in the searched parcel; that, even assuming he did, there was reasonable suspicion to initially seize the package and probable cause to search it; and that Defendant's request for a *Franks* hearing should be denied. *See generally* Report.

The Report properly notified the parties of their right to object to Magistrate Judge Strauss's findings. *Id.* at 32. Defendant filed Objections, [ECF No. 91]. The Court having carefully reviewed the Report, the Objections, and the record, and being otherwise fully advised, it is hereby

ORDERED AND ADJUDGED that the Report, [ECF No. 90], is AFFIRMED and ADOPTED.

## **BACKGROUND**

The following facts are derived from the Report, confirmed by a review of the record.  The Report's factual findings are largely based "on the testimony and evidence presented at [an] evidentiary hearing" held before Magistrate Judge Strauss ("Hearing").  Report at 2; *see also* Tr. Suppression Hr'g ("Hearing Transcript"), [ECF No. 91-1].  The Court assumes the parties' familiarity with the relevant facts but summarizes the most pertinent factual findings.

On September 9, 2021, Palm Beach County Sheriff's Office Agent Henry Ramos intercepted a package ("Castro Parcel") sent via Priority Mail addressed to "Auto Body Shop, aka Castro, 149 SE Second St., Bay 1, Deerfield Beach, FL 33441" ("Delivery Address").  Report at 2.  Ramos had previously placed a "mail cover" on the Delivery Address because of a "perceived connection" between the Delivery Address and a package identified in July 2021 that contained fentanyl.  *Id.*  Ramos, based on his training and experience, believed the Castro Parcel might contain narcotics or narcotics proceeds due to several observations he testified to at the Hearing.  *See* Report at 2–5.  He temporarily seized the Castro Parcel and Wall-E, a drug-detection-trained canine, performed an "open-air" sniff on the Castro Parcel and four to five empty boxes.  Report at 5.

Wall-E alerted on the Castro Parcel, and Ramos applied for a search warrant, which was granted.  Report at 10; *see also* Appl. for a Search Warrant ("Application"), [ECF No. 77-1].  After opening the Castro Parcel, Ramos found a substance containing methamphetamine.  Report at 12.  Ramos then obtained a tracking warrant and an anticipatory search warrant to affect a controlled delivery of the Castro Parcel, which ultimately resulted in Defendant's arrest.  Report at 12–15.  Defendant has now moved to suppress physical evidence stemming from the search of the Castro Parcel and requests a *Franks* hearing to address alleged misrepresentations in the affidavit Ramos submitted to obtain the warrant to search the Castro Parcel.

## LEGAL STANDARD

This Court reviews *de novo* the determination of any disputed portions of the Magistrate Judge's Report. *United States v. Powell*, 628 F.3d 1254, 1256 (11th Cir. 2010). Any portions of the Report to which no specific objection is made are reviewed only for clear error. *Macort v. Prem, Inc*., 208 F. App'x 781, 784 (11th Cir. 2006). A proper objection "identifie[s] specific findings set forth in the [Report] and articulate[s] a *legal* ground for objection." *Leatherwood v. Anna's Linens Co*., 384 F. App'x 853, 857 (11th Cir. 2010).

## ANALYSIS

### I. Reasonable Expectation of Privacy

Magistrate Judge Strauss concluded that "Defendant has likely failed to establish a legitimate expectation of privacy" in the Castro Parcel. Report at 20. Defendant challenges this conclusion, but the Court finds no error.

As correctly stated in the Report, a defendant can have a reasonable expectation of privacy in a package not addressed to him if he "establishes a connection between himself and the addressee." *United States v. Campbell*, 434 F. App'x 805, 809 (11th Cir. 2011). The Report concludes Defendant did not establish this connection, because while the package was primarily addressed to "Auto Body Shop," which was undisputedly Defendant's business (of which he was the sole employee), *see* Hr'g Tr. at 12:1–2, the addressee was more specifically listed as "aka Castro," a person Defendant does not seem to know. Report at 18; Hr'g Tr. at 14:11–15. While this case is slightly removed from *Campbell* in that Defendant's business was listed on the Delivery Address and he was the sole employee, the Court agrees with Magistrate Judge Strauss that Defendant has failed to show he had a reasonable expectation of privacy in the parcel given that the parcel had a specific addressee—who was *not* Defendant—and Defendant relinquished control of the package to another person, did not know the true contents of the package, and was not the

person who opened the package.  Assuming Defendant did have a reasonable expectation of privacy, however, the Court also agrees the Motion must nonetheless be denied for other reasons.

## II.  Reasonable Suspicion & Probable Cause

The Court agrees with Magistrate Judge Strauss that there was reasonable suspicion to temporarily seize the package and probable cause to obtain a search warrant.

### i.  *Reasonable Suspicion*

Preliminarily, the Court notes that the bulk of Defendant's objections relate to the observations made by Ramos that made him suspicious of the Castro Parcel.  *See* Objs. at 4–10.  Many of these were either not included in, or different from, the representations in his Application for a search warrant.  But Magistrate Judge Strauss "credit[ed] Ramos's testimony that these observations contributed to his suspicion about the Castro Parcel, even if they were not included for Magistrate Judge Reinhart to consider in determining probable cause."  Report at 10 n.9.  The Eleventh Circuit has "cautioned district judges from overruling a magistrate judge's finding where credibility determinations are dispositive."  *Manning ex rel. Manning v. Sch. Bd. of Hillsborough Cnty., Fla.*, 244 F.3d 927, 946–47 (11th Cir. 2001).  After conducting a *de novo* review of the Hearing transcript and the record, the Court adopts Magistrate Judge Strauss's finding that these factors contributed to Ramos's suspicion of the Castro Parcel.[1]

### ii.  *Probable Cause*

Defendant next challenges the basis of Ramos's probable cause to search the Castro Parcel by arguing the Government did not establish Wall-E is reliable in alerting to controlled substances.

---

[1]  One of the factors supporting Ramos's reasonable suspicion was that the Castro Parcel was heavily taped. Defendant notes that Ramos appeared to testify he could not see the tape on the Castro Parcel on his computer screen prior to having the parcel seized to inspect it.  Hr. Tr. 187:12–16.  But Ramos then said that "[he] could see the tape, a ton." *Id.*  Notwithstanding this discrepancy, whether Ramos first noticed the tape via his computer or in person, he still had a sufficient basis for his reasonable suspicion to seize the parcel and inspect it given the numerous other factors credited by Magistrate Judge Strauss.

Objs. at 12–16.   Specifically, Defendant takes issue with: (1) the testimony of Deputy Cesar Tejada, Wall-E's handler, who stated that—despite at least two instances during which Wall-E alerted and no controlled substances were recovered—he essentially believes Wall-E never incorrectly alerts; and (2) Magistrate Judge Strauss's determination that Wall-E is reliable.

After a review of the Hearing transcript, the Court agrees that Tejada's unwavering acceptance of Wall-E's alerts is slightly troubling. *See, e.g.*, Hr'g Tr. 77:11–22.  But so did Magistrate Judge Strauss, who found that "[t]he suggestion that Wall-E has never alerted on anything other than a controlled substance" was "implausible."  Report at 25.  Magistrate Judge Strauss did credit some of Tejada's testimony, however, which reflects that in instances where Wall-E alerts but no controlled substances are ultimately found, Tejada files a report indicating the negative alert and does not reward Wall-E.  Report at 26.  This finding accurately reflects Tejada's testimony.  Hr'g Tr. 81:25, 83:19–23, 85:1–2.

Defendant, however, argues the Government "did not establish Wall-E's error rate" and Magistrate Judge Strauss was incorrect to note that "in order to conclude that Wall-E is unreliable to the point that his alert does not amount to probable cause, his 'error rate' would need to be exponentially higher" than Tejada's estimates.  Objs. at 16; Report at 26.  First, the Government did put on evidence relating to Wall-E's error rate: Tejada's testimony, during which he acknowledged that Wall-E has seemingly falsely alerted twice over the course of over one-hundred searches.  Report at 26; Hr'g Tr. 95:10–15.  Second, the finding in the Report quoted above was in response to a *hypothetical* scenario in which Tejada was incorrect that Wall-E has only falsely alerted twice, and simply notes that Tejada's estimate would have to be severely off to call Wall-E's reliability into question.  This was not erroneous to observe.

Ultimately, however, Magistrate Judge Strauss found that it was "the evidence of Wall-E's training, and his certification from that training, that carrie[d] the day."  Report at 26.  Defendant

has not made any challenge to the Report's findings related to Wall-E's training or certification, and the Court finds no error in the Report's conclusions relating to them.  And Magistrate Judge Strauss correctly focused on Wall-E's training, because "a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert" and "[t]he better measure of a dog's reliability . . . comes away from the field, in controlled testing environments." *Florida v. Harris*, 568 U.S. 237, 246 (2013).  Therefore, the Court agrees with the Report's conclusion that the Government established Wall-E's reliability, and accordingly agrees Ramos had probable cause to search the Castro Parcel.

**III. *Franks* Hearing**

The Court notes that the Report recommends Defendant's request for a *Franks* hearing be denied because "even if one were to delete paragraphs 9-12 and 15 of the affidavit presented to [secure the search warrant], the affidavit still establishes probable cause." Report at 29.  Defendant has made no objection to this finding other than challenging the representations addressed above.  The Court therefore agrees with Magistrate Judge Strauss's conclusion that Defendant is not entitled to a *Franks* hearing.  According, Defendant's Motion must be denied.[2]

## CONCLUSION

Having conducted a *de novo* review of the Report's findings identified in the Objections, and having reviewed all other sections of the Report for clear error, the Court finds none.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** that the Report, [ECF No. 90], is **AFFIRMED** and **ADOPTED** as follows:

1.  Defendant's Motion, [ECF No. 77], is **DENIED**.

---

[2]  The Report also recommends that the Court deny the Government's Motion to Dismiss as moot.  Report at 1 n.1.  The Government filed no objection, and because the Court denies Defendant's Motion it agrees with this conclusion.

2.  The Government's Motion to Dismiss, [ECF No. 81], is **DENIED AS MOOT**.

**DONE AND ORDERED** in Miami, Florida, this 3rd day of June, 2023.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**